UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GULF COAST ROD REEL AND GUN CLUB, INC., *et al*, | § § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-126 |
| | § § | |
| UNITED STATES ARMY CORPS OF ENGINEERS | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Two community groups challenge the State's plan to close Rollover Pass—a manmade channel and "nationally-recognized fishing destination" that cuts across the Bolivar Peninsula. Rollover Pass was originally created in 1955 to improve the ecological health and salinity levels of the eastern part of Galveston Bay by connecting it directly to the Gulf of Mexico. Now, over fifty years after its creation, the State seeks to close the pass "to reduce coastal erosion by eliminating the sediment transport into Rollover Pass" and to "return Rollover Bay and East Bay to their historical salinity regimes" because of concerns that increased salinity is harming the Bay's estuarine system. In August 2012, the U.S. Army Corps of Engineers approved the Texas General Land Office's (GLO) request for a Clean Water Act permit to close Rollover Pass. Plaintiffs then filed suit, alleging that the Corps' decision to issue a finding of no significant impact for the closure was

arbitrary and capricious. Plaintiffs further allege that the Corps violated the National Environmental Policy Act (NEPA) and the Clean Water Act by failing to fully disclose the ecological and socioeconomic impacts that would result from closure of Rollover Pass

At this stage, Plaintiffs seek to supplement the administrative record and introduce extra-record evidence "in order to aid the court in reviewing the rationality of the Corps' decision." Docket Entry No. 51 at 9.

## I. LEGAL STANDARD

In reviewing an agency's action, the Administrative Procedure Act requires a court to review "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Courts must generally limit their review to the administrative record before the agency at the time the decision was made. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). This principle is often referred to as the "record rule." *Indep. Turtle Farmers of La., Inc. v. United States*, 703 F. Supp. 2d 604, 610 (W.D. La. 2010). "[A]bsent clear evidence to the contrary, an agency is entitled to a presumption that it properly designated the administrative record." *Calloway v. Harvey*, 590 F. Supp. 2d 29, 37 (D.D.C. 2008).

However, in certain circumstances a court may permit supplementation of the record or the introduction of extra-record evidence to enable effective judicial review. The distinction between "supplementation" and "extra-record evidence" is

a significant one that is sometimes overlooked in the case law.[1] Supplementation is "essentially a claim that some information that should have properly been included in the administrative record was not." *Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 113–14 (D.D.C. 2009). In other words, supplementation seeks to correct a clerical error: the record submitted to the reviewing court failed to include something that was considered at the agency stage. On the other hand, extra-record evidence is, as its name indicates, "extra" or additional evidence "outside of or in addition to the administrative record that was not necessarily considered before the agency." *Calloway*, 590 F. Supp. 2d at 38 (internal citations omitted). Supplementation does not pose a difficult legal issue. It is consistent with the "record rule" to remedy an inadvertent failure to include part of the agency record in the record submitted with the reviewing court. *See Cape Hatteras Access Pres. Alliance*, 667 F. Supp. 2d at 114 ("There should be nothing controversial about this proposition. If for some reason, materials that were actually a part of the agency's record were not properly

---

[1] Courts also use different terminology—such as extra-record evidence, supplementing the record, completing the record, or going beyond the record. *See, e.g.*, *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 247 (5th Cir. 2006) (plaintiffs' argument that record "does not contain certain documents that should be part of the record" analyzed as "extra-record evidence"); *Grunewald v. Jarvis*, 924 F. Supp. 2d 355, 358 (D.D.C. 2013) ("There is a difference between 'supplementing the Record' and 'going beyond the Record.' The former seeks to add documents that were before the agency but not included in the Administrative Record, while the latter seeks to add documents not before the agency but that should nonetheless be in the Administrative Record." (internal citation omitted)); *see also* James N. Saul, Comment, *Overly Restrictive Administrative Records and the Frustration of Judicial Review*, 38 ENVTL. L. 1301, 1322 n.162 (2008) ("What I call 'completing' the record the court calls 'supplementing' the record, and what I call 'supplementing' the court calls 'reviewing extra-record evidence.'").

included, whether by design or accident, they should be included in the record for the Court's review."). A request for a reviewing court to consider extra-record evidence not considered by the agency is, however, at odds with "record rule" and thus presents a more challenging legal question.

The parties dispute the number and scope of the recognized exceptions to the record rule that permit consideration of evidence not included in the administrative record the agency submits to the court. Plaintiffs assert that there are the following eight exceptions:

1. when agency action is not adequately explained in the record before the court;
2. when the agency failed to consider factors which are relevant to its final decision;
3. when an agency considered evidence which it failed to include in the record;[2]
4. when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;
5. in cases where evidence arising after the agency action shows whether the decision was correct or not;
6. in cases where agencies are sued for a failure to take action;
7. in cases arising under NEPA; and
8. in cases where relief is at issue, especially at the preliminary injunction stage.

---

[2] This is the "supplementation" previously mentioned. Inclusion of "supplementation" as an exception to the "record rule" is an example of the confusion previously noted in which courts have sometimes muddled these separate concepts.

4 / 15

*Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force*, 249 F. Supp. 2d 763, 776 (N.D. Tex. 2003), *vacated on other grounds sub nom. Davis Mountains Trans-Pecos Heritage Ass'n v. Fed. Aviation Admin.*, 116 Fed. App'x 3, 16 (5th Cir. 2004) (reversing on other grounds but confirming that "the district court correctly stated the law regarding extra-record evidence in NEPA cases"); *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 2011 WL 1230099, at *9 (S.D. Tex. March 30, 2011) (listing same eight exceptions).  This list of exceptions stems from a law review article that summarized exceptions various courts have recognized,³ and has been recognized by the D.C. Circuit and other courts, *see, e.g.*, *Esch v. Yeutter*, 876 F.2d 976, 991 & n.166 (D.C. Cir. 1989) (citing cases that recognized the various exceptions).  *But see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (concluding that "*Esch*'s vitality even within the D.C. Circuit is questionable in light of more recent opinions by that court which demonstrate a more restrictive approach to extra-record evidence").

In particular, Plaintiffs highlight the importance of the so-called "NEPA exception"—that "[d]eviation from [the] 'record rule' occurs with more frequency in the review of [NEPA] decisions than in the review of other agency decisions." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *see also* Susannah

---

³ Steven Stark & Sarah Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 ADMIN. L. REV. 333, 345 (1984).

T. French, Comment, *Judicial Review of the Administrative Record in NEPA Litigation*, 81 CALIF. L. REV. 929, 951 & n.156 (1993) (collecting Fifth Circuit cases that refer to district courts' acceptance of extra-record evidence in NEPA cases "as a matter of course"). The rationale for this exception is that because NEPA calls for a comparative inquiry, *see, e.g.*, 42 U.S.C. § 4332, deciding whether an agency has sufficiently considered environmental impacts requires some sense of the universe of information that was available for the agency to consider. *See Sierra Club v. Peterson*, 185 F.3d 349 (5th Cir. 1999) (explaining the rationale behind the NEPA exception and extending it to disputes involving the National Forest Management Act); *Davis Mountains*, 116 F. App'x at 12 ("This court has recognized an exception to the general rule, however, where examination of extra-record materials is necessary to determine whether an agency has adequately considered environmental impacts under NEPA."). *But see* II RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 11.6 (5th ed. 2010) (casting doubt on rationale for NEPA exception and citing circuit split over its existence).

The Corps, however, argues that a recent Fifth Circuit case recognized only three "'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency":

> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision,

    (2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or

    (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010). Note that the second *Medina* situation reflects the rationale for the "NEPA exception"—"determin[ing] whether the agency considered all of the relevant factors." *Id.*

    Plaintiffs attempt to distinguish *Medina* as a mere supplementation case that does not change the longer list of exceptions for extra-record evidence. It is true that *Medina* involved what the petitioner called a "motion to supplement," so the court referred to it as an issue of "supplementation." 602 F.3d at 705–06. But this is an example of the mixing of terminology noted above that has infected the case law in this area. The actual materials that the *Medina* petitioner sought to "supplement" the record with were clearly not part of the agency record. The documents were "scientific and commercial data" that the agency "*failed to consider*." *Id.* at 705 (emphasis added). And at least the second and third exceptions to the record rule that *Medina* announced cover extra-record material, not intentionally or negligently omitted materials. Therefore, regardless of the labels used, *Medina* dealt with what is traditionally considered a request to add "extra-record" evidence, not an attempt to supplement with evidence that the

agency considered but failed to include in the judicial record.

The Court also, however, does not agree with the Corps' reading of *Medina* as a sea change in this circuit's law on extra-record evidence. *Medina* did not explicitly purport to overrule prior decisions concerning exceptions, including the NEPA exception the circuit has repeatedly recognized. *See Peterson*, 185 F.3d at 370 (citing Fifth Circuit cases recognizing that a district court may review evidence outside the administrative record to determine whether "an agency adequately considered the environmental impact under NEPA of a particular project"). More fundamentally, it does not seem that there will often be a significant practical distinction between the eight exceptions listed in *Davis Mountains* and the three listed in *Medina*.

Most, and perhaps all, of the eight *Davis Mountains* exceptions fit within the three broader categories in *Medina*. *See* Docket Entry No. 61 at 11 (Plaintiffs' Reply Brief) ("It is not at all clear that, upon examination, the *Medina* test would exclude use of any of the eight factors from *Davis Mountains*, or *vice versa*."). For example, *Davis Mountains* exceptions #2, #4, #5, and #7 arguably fall within *Medina* exception #2. And *Medina* was not a NEPA case, so it makes sense that there was no mention of a specific NEPA exception.

The Court therefore concludes that the difference between the *Medina* and *Davis Mountains* lists does not have much practical significance for the materials

Plaintiffs are seeking to add in this case. The more important consideration is the purpose for which the petitioner seeks to use the additional materials. Extra-record evidence may be permissible for certain types of challenges to agency action, but not others. And there is often not an all-or-nothing answer to the question. Even when it may be considered, its use by the reviewing court should be limited to the purpose which justified a departure from the record rule. As discussed above for the NEPA exception, the Fifth Circuit allows a court to consider additional documents to get a sense of the universe of potential information in deciding whether the agency conducted a sufficiently thorough assessment. For traditional arbitrary-and-capricious review, however, any use of extra records should be quite limited, such as to help the court gain a better understanding of the often technical subject matter at issue. *See Davis Mountains*, 249 F. Supp. 2d at 776 (recognizing exception "when a case is so complex that a court needs more evidence to enable it to understand the issues clearly"). Once that background understanding is achieved, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camps v. Pitts*, 411 U.S. 138, 142 (1973); *see also* 5 U.S.C. § 706 (stating that the "court shall review the whole record or those parts of it cited by a party"). Thus, even when considered by a court, the additional material is "extra" and does not alter the record against which the agency's decision is reviewed.

## II.    ANALYSIS

With this understanding, or attempt at understanding, the law in this area, the Court addresses the Plaintiffs' request to have the court consider three categories of evidence that are not included in the administrative record submitted by the Corps: (1) a scientific article about sand transport by Bales and Holley that they contend the Corps *actually relied upon* but erroneously left out of the record; (2) three studies by the Bureau of Economic Geology that were available *prior to* the Corps' decision but that the Corps did not rely upon; and (3) three expert reports about salinity and sedimentation created *after* the Corps' decision.  *See* Docket Entry No. 51.  At the request of both parties, the Court agreed to consider the motion to supplement prior to the merits briefing.  This offered the potential benefit of establishing the scope of the record prior to merits briefing so that briefing would not have to be framed in contingencies.  What sounded good in theory proved unworkable in practice. Having considered the free-standing motion to supplement, the Court concludes it is unable to conclusively rule on all of the requested additions to the record without the better understanding of how Plaintiffs would use that evidence that will come from the merits briefing.  *See, e.g.*, *Medina*, 602 F.3d at 707 (denying petition for review of the agency's decision and motion to supplement simultaneously); *Mireles-Zapata v. Ridge*, 76 F. App'x 546, 547 (5th Cir. 2003) (per curiam) (granting motion to supplement in part but denying

petition for review of INS decision); *Fliteline Maint. v. Hinson*, 82 F.3d 415 (5th Cir. 1996) (denying petition for review of FAA finding and motions to supplement simultaneously).

### a. Bales and Holley Article

Of the three types of documents Plaintiffs seek to add, the Bales and Holley article is the only one that fits into the less controversial supplementation category. Their 1989 article "Sand Transport in Texas Tidal Inlet" was at least indirectly relied upon to support the GLO's primary stated purpose of "reduc[ing] coastal erosion by eliminating the sediment transport into Rollover Pass."

A report prepared by Taylor Engineering for the GLO is one of the most critical parts of the administrative record. The Taylor report heavily relies on the earlier Bales and Holley article for its sediment transport rates and analysis of Rollover Pass' impact on dredging. AR at COE000497–98 (four of seven studies relied upon and two figures come from the Bales and Holley article, as does the Corps' range of 80,000 to 290,000 cubic yards of additional sediment per year). The Corps' assessment thus either actually or constructively relied on the Bales and Holley data to support its conclusion that the closure of Rollover Pass will alleviate adverse sediment transport impacts. Even if the Corps did not examine the Bales and Holley article as a separate document, the Taylor report's reliance on its analysis warrants treating it is as part of the record. "The complete

administrative record consists of all documents and materials directly or *indirectly* considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.3d 735, 739 (10th Cir. 1993) (emphasis added); *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196 (D.D.C. 2005) (same).

### b. Bureau of Economic Geology Studies

Unlike the Bales and Holley article, Plaintiffs do not assert that the Corps actually relied—either directly or indirectly—on the Bureau of Economic Geology studies. The Bureau functions as the State Geological Survey of Texas and "'partners with federal, state, and local agencies,' among other institutions and organizations, to 'conduct high-quality research and disseminate the results to the scientific and engineering communities' and the public." Docket Entry No. 51 at 33. Plaintiffs seek to supplement the record with three publicly available Bureau studies on erosion that "represent 'background information' available to the Corps at the time of its decision that help determine whether the agency considered all of the relevant factors." *Id.* These studies, according to Plaintiffs, "tend to demonstrate that shoreline erosion is occurring along large sections of the shoreline, independent of the existence of Rollover Pass." *Id.* at 34.

These are the studies for which it will be most useful to gain a better understanding of Plaintiffs' substantive challenge to the Corps' decision and how these documents fit into that effort. Specifically, it will be helpful to see what the

Corps considered regarding erosion before deciding whether the Court needs these three studies under *Medina*'s category of "background information."  If the use is limited to the NEPA claim and just an attempt to show other available information that the Corps arguably neglected, the Court is more likely to consider the Bureau studies.  The Court will thus wait to decide whether to consider these extra-record studies, and for what purpose, until it has the full merits briefing.

### c. Dunbar and Trungale Expert Reports

Finally, Plaintiffs seek to introduce extra-record reports of Lawrence Dunbar and Trungale Engineering and Science on the issues of salinity and dredging to "illuminate and prove the consequences of flawed modeling" relied upon by the Corps.  Docket Entry No. 51 at 16.  As with the Bureau studies, the Court will wait to determine whether these reports will be considered when it has the benefit of the full briefing on the permitting decision.

The Court notes, however, its reluctance to consider these litigation-related expert reports created after the agency's decision.  Courts have long refused to consider reports created at the litigation stage when reviewing agency action.  *See Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 419 (holding that "litigation affidavits" used by agency to defend its action in court were "merely 'post hoc' rationalizations, which have traditionally been found to be an inadequate basis for review" (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69

(1962)); *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130–31 (9th Cir. 2012) ("[P]ost-decision information 'may not be advanced as a new rationalization either for sustaining or attacking an agency's decision' because 'it inevitably leads the reviewing court to substitute its judgment for that of the agency.'" (citation omitted)). Because these reports did not exist at the time the Corps issued the permit, for example, they could not have been information the Corps neglected to consider that would implicate the NEPA exception.

Plaintiffs' argument that they could not submit their expert reports during the comment period because "the specifics of the Corps' failures could not be known before careful review" of the administrative record, Docket Entry No. 61 at 19, would render the record rule meaningless. As the D.C. Circuit stated in a recent extra-record evidence case, "the dialogue between administrative agencies and the public is a two-way street[,] and [j]ust as the opportunity to comment is meaningless unless the agency responds to significant points raised by the public, so too is the agency's opportunity to *respond to* those comments meaningless unless the interested party clearly states its position." *CTS Corp. v. EPA*, 759 F.3d 52, 65 (D.C. Cir. 2014) (alterations and emphasis in original) (quoting *Northside Sanitary Landfill, Inc. v. Thomas*, 849 F.2d 1516, 1520 (D.C. Cir. 1988)) (internal quotation marks omitted)).

Therefore the only potential use the Court is likely to consider would be as

extra-record background evidence to provide a basic understanding of the sediment and salinity models, *see Davis Mountains*, 116 F. App'x at 12 ("In the present case we find it necessary to look at the Dwinnell text to determine whether the Air Force's use of the equation therein was sound.  Because we lack technical expertise in aerodynamics, we also consider extra-record materials to aid our understanding of the science involved."); *Indep. Turtle Farmers of La.*, 703 F.Supp.2d at 613 n.9 (allowing post-decision articles as extra-record evidence "to elucidate the ITFL's arguments and enlighten the Court as to the scientific foundation of those arguments"), *not* as evidence that the Court believes the agency should have relied on at the time of its decision or that could show that the agency's decision was arbitrary.

### III.  CONCLUSION

Accordingly, the Motion to Supplement the Administrative Record and Introduce Extra-Record Evidence (Docket Entry No. 51) is GRANTED IN PART as to the Bales and Holley article.  The Court will take the remainder of the motion under advisement when it considers the parties' briefing on the merits of the permitting decision.

Signed this 20th day of April, 2015.

_____
Gregg Costa
United States Circuit Judge
(Sitting by Designation)